**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

United States Courts
Southern District of Texas
ENTERED

SEP 2 5 2002

Michael N. Milby, Clerk of Court

| | |
|---|---|
| MARION BUTLER DUDLEY,<br>            Petitioner,<br><br>VS.<br><br>JANIE COCKRELL,<br>Director, Texas Department of<br>Criminal Justice, Institutional<br>Division,<br>            Respondent. | §<br>§<br>§<br>§   CIVIL ACTION NO. H-01-1506<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**MEMORANDUM AND ORDER**

Petitioner Marion Butler Dudley sues under 28 U.S.C. § 2254 to vacate his state capital murder conviction and death sentence. (Docket Entry No. 10). Respondent Janie Cockrell, Director of the Texas Department of Criminal Justice, Institutional Division, has answered and moved for summary judgment. (Docket Entry No. 17). Dudley has replied and filed a cross-motion for partial summary judgment. (Docket Entry No. 22). After a careful review of the petition; the motions and response; the state court record; and the applicable law, this court GRANTS respondent's motion for summary judgment and DENIES Dudley's summary judgment motion.[1] Based on this ruling, this court DENIES Dudley's petition for a

---

[1] The state court records of Dudley's trial consist of a two-volume transcript that contains pretrial motions, trial court orders, jury instructions, and other pleadings, cited as "Trans. Vol. __,



writ of habeas corpus, addresses the issuance of a certificate of appealability, and, by separate order, dismisses this case.

The reasons for these rulings are set out in detail below.

## I.   Background

### A.   Procedural History

On October 10, 1994, the State of Texas indicted Dudley for capital murder. (Trans. Vol. I, p. 6). A jury tried Dudley, convicted him of capital murder, and sentenced him to death. The court gave the jury instructions on the law of the parties that included several theories on which the jury could convict Dudley. The jury returned a general verdict without specifying the capital murder theory it used to convict. (Trans. Vol. I-A, p. 405). The Texas Court of Criminal Appeals affirmed Dudley's conviction and sentence on direct appeal. *Dudley v. State*, No. 72,091 (Tex. Crim. App. June 4, 1997) (hereinafter "opinion"). Dudley did not seek *certiorari* review from the United States Supreme Court. The Court of Criminal Appeals denied Dudley's petition for state habeas relief on October 18, 2000. *Ex Parte Dudley*, No. 46,854-01 (Tex. Crim. App. October 19, 2000). That same day, the Court of Criminal

---

p. __;" a thirty-nine volume Statement of Facts, including hearings on pretrial motions, jury voir dire, the guilt/innocence phase, and the penalty phase, cited as "S.F. Vol. __, p. __;" and a transcript of the state habeas proceedings, cited as "S.H. p. __."

Appeals dismissed Dudley's supplemental habeas petition as an abuse of the writ. *Ex Parte Dudley*, No. 46,854-02 (Tex. Crim. App. October 19, 2000).

On May 4, 2001, Dudley filed a skeletal petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this court. (Docket Entry No. 8). On July 20, 2001, Dudley filed a supplemental petition. (Docket Entry No. 10). Dudley presents his federal claims in narrative form, without substantial legal development. Dudley has raised the following claims for relief:

- The trial court violated his Eighth Amendment rights by failing to allow the introduction of certain evidence at the punishment phase of trial.

- The trial court violated his right to counsel by removing his original attorney.

- Trial counsel[2] provided ineffective assistance by failing to request a lesser included offense instruction, failing to object to the introduction of inadmissible evidence, and failing to present adequate mitigating evidence.

- Insufficient evidence supported the conviction for capital murder.

- Insufficient evidence supported the jury's answer to the second special issue.

---

[2] At trial, Connie Williams and Christopher Goldsmith represented Dudley. Both attorneys are collectively referred to as "trial counsel" in this opinion.

- Insufficient evidence supported the jury's answer to the first special issue.

Dudley's claims, and the motions for summary judgment, are addressed below.

## B.   Factual History

On June 20, 1992, six people were shot and left for dead in a home in Houston. Two survived: Rachel Tovar and Nicholas Cortes Anzures. Testimony and other evidence at trial established the relevant facts. On June 20, 1992, Dudley, Arthur Brown, and Tony Dunson drove from Tuscaloosa, Alabama to Houston, Texas to purchase drugs from Rachel Tovar and her husband, Jose Tovar. Dudley had previously purchased cocaine and marijuana from these individuals and had quarreled with them over the price of drugs.

On June 20, Dudley and Brown went to the Tovar house to buy three kilograms of cocaine. Rachel Tovar told them to come back later. When they returned, Rachel Tovar showed them a sample of cocaine and told Dudley and Brown that she would have the drugs if they returned a third time.

Later in the evening, Rachel Tovar was visiting a neighbor, Brevis Ned, when she noticed the porch light at her house flash on and off several times. She returned home. Inside her house, Dunson walked up behind her, put a gun in her

back, and ordered her to a back bedroom.  As she walked down the hallway, she saw

Brown.  When she entered the bedroom, she saw her husband, Jose Tovar; her son,

Frank Farias; her daughter-in-law, Jessica Quinones; and a neighbor, Audrey Brown.

Dudley was holding a revolver to Jose Tovar's head.  Rachel Tovar noticed that

Dudley wore gloves and held a black revolver.  Rachel Tovar heard Dudley yell at

Jose Tovar: "You stupid Mexican.  I never did like you.  My brother got killed back

home, and it's all your fault." (S.F. Vol. XXIV, p. 585).  Audrey Brown began to cry

and asked if she could leave.  Dudley responded, "You shouldn't have been here you

stupid bitch." (S.F. Vol. XXIV, pp. 585, 86).  Jessica Quinones, who was visibly

pregnant fell, apparently fainting.  As Rachel Tovar comforted her, Dudley yelled,

"You stupid bitch.  Don't you go into labor on me." (S.F. Vol. XXIV, p. 586).

Brown came into the room carrying a kitchen knife that he used to cut

a bed sheet into strips.  Brown bound Farias with some of the strips and moved him

into another room.  Brown tied Audrey Quinones's hands and put her in the same

room with Farias.  Brown then tied up Rachel Tovar and moved her to another

bedroom.

Rachel Tovar heard Dudley ask her husband: "Where is the money.  We

know you have money.  Where is the money." (S.F. Vol. XXXIX, p. 590).  Brown

then brought Jessica Quinones into the room and made her gag Rachel Tovar with a

piece of the sheet.  Rachel Tovar heard Dudley tell Jose Tovar that there "had better

not be any more money" in the house.  Out of fear over what they would do if they

found more money, Rachel Tovar had Brown and Dudley remove her gag and told

them where to find more money.

Rachel Tovar heard the doorbell ring.  Nicolas Cortes Anzures, a former

coworker of Jose Tovar, had dropped by to visit.  Farias told Cortes through the

closed door that Jose Tovar was not home.  Cortes kept knocking on the door because

he had seen Jose Tovar's car.  Jessica Quinones opened the door and Cortes saw a

man behind her.  The man forced Cortes to enter the house at gunpoint.  Cortes saw

another man, later identified as Dudley, holding a chrome pistol.  The men told Cortes

not to look at them and forced him into a back bedroom, where he saw Jose Tovar

bound and gagged on the floor.  The men tied up Cortes and left him on the bed.  One

of the men took twenty dollars from Cortes and again asked Jose Tovar for money.

At that point, Rachel Tovar heard a woman screaming, then gunshots.

Rachel Tovar heard one more loud bang as she was shot in the head.  She could not

tell which of the men shot her.  Cortes heard the gunshots and tried to flee, but could

not because of his restraints.  Cortes saw two of the men enter the room, take several

items, leave, then return.  When they reentered, Cortes saw a man, whom he thought

was Dudley, shoot Jose Tovar in the head with a chrome pistol.  At trial, a firearms

6

expert verified that Jose Tovar had been shot in the face with a gun that generally has a silver or chrome barrel. The man with the chrome gun then shot Cortes in the back of the head.

In the end, everyone in the house was shot. Only Rachel Tovar and Cortes survived. Based on statements from the surviving victims and other witnesses, the police identified Dudley and the others. The police eventually arrested Dudley, living under another name, in North Carolina.

A grand jury indicted Dudley under several different theories for the four murders. (S.F. Vol. I, p. 6). After the presentation of evidence at trial, the trial court delivered the following instruction under TEX. PENAL CODE ANN. § 7.02:

> All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.
>
> A person is criminally responsibly for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

(Trans. Vol. I-A, p. 399).  Based on the instruction on the law of the parties, the trial court presented the following theories under which the jury could convict Dudley of capital murder:

    (1)    Dudley intentionally or knowingly caused the death of at least two of the victims by shooting them with a firearm during the same criminal transaction;

    (2)    Dudley "with the intent to promote or assist the commission of the offense of capital murder, if any solicited, encouraged, directed, aided or attempted to aid Arthur Brown" in shooting at least two of the victims during the same criminal transaction;

    (3)    Dudley murdered Jose Tovar during the course of a robbery; or

    (4)    Dudley "with the intent to promote or assist the commission of the offense of robbery, if any, solicited, encouraged, directed, aided or attempted to aid Arthur Brown" in shooting Jose Tovar.

(Trans. Vol. I-A, at pp. 399-400).  The jury found Dudley guilty of capital murder. The verdict form did not require the jury to specify the theory on which it relied. (Trans. Vol. I-A, p. 405).  The jury simply stated "We, the Jury, find the Defendant, Marion Butler Dudley, guilty of capital murder, as charged in the indictment." (Trans. Vol. I-A, p. 405).

    During the penalty phase of the trial, the State offered evidence from several witnesses as to Dudley's extensive history of violent behavior, drug offenses,

and lengthy criminal record.  The State also presented evidence showing that capital murder defendants who receive a life sentence have a high rate of future violent acts. The defense presented expert testimony showing that Dudley would likely pose a low risk of future danger to society.  One of Dudley's friends testified that he had been "set up" for one of the aggravated robberies introduced as part of his prior criminal record.  A mental health expert testified that as Dudley aged, he would  pose a lower risk of dangerous violent acts.  Dudley's mother asked the jury to spare his life. Dudley also testified, disclaiming any involvement in the murders and many of the past violent offenses shown by the evidence.

The jury returned an answer to each of the special issues submitted under Texas Criminal Procedure Article 37.071 in a manner that would require the imposition of a death sentence.  The jury answered the following questions:

### Special Issue No. 1

Is there a probability that the Defendant, Marion Butler Dudley, would commit criminal acts of violence that would constitute a continuing threat to society?

### Special Issue No. 2

Do you believe from the evidence beyond a reasonable doubt that Marion Butler Dudley, the Defendant, actually caused the death of Jessica Quinones, Jose Tovar, Audrey Brown, or Frank Farias, or did not actually cause the death of Jessica Quinones, Jose Tovar, Audrey Brown or Frank

Farias but intended to kill Jessica Quinones, Jose Tovar,
Audrey Brown, or Frank Farias or another or anticipated
that a human life would be taken?

### Special Issue No. 3

Taking into consideration all of the evidence, including the
circumstances of the offense, the Defendant's character and
background, and the personal moral culpability of the
Defendant, do you find that there is a sufficient mitigating
circumstance or circumstances to warrant that a sentence of
life imprisonment rather than a death sentence be imposed?
You are instructed that the term "mitigating evidence" or
"mitigating circumstances" means evidence that a juror
might regard as reducing the Defendant's moral
blameworthiness.

The jury need not agree on what particular evidence
supports an affirmative finding (that is, an answer of yes),
on this Special Issue.

(Trans. Vol. I-A, p. 506-09).   The trial court sentenced Dudley to death.   State

appellate and habeas review were followed by this petition.

## II.     The Applicable Legal Standards

### A.     The Anti-Terrorism and Effective Death Penalty Act

Dudley filed his habeas petition after the effective date of the Anti-

Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").   *See Lindh v.*

*Murphy*, 117 S. Ct. 2059, 2063 (1997); *Nobles v. Johnson*, 127 F.3d 409, 415 (5th

Cir. 1997), *cert. denied*, 118 S. Ct. 1845 (1998).   The AEDPA "embodies the

principles of federalism, comity, and finality of judgments," *Evans v. Cockrell*, 285 F.3d 370, 374 (5th Cir. 2002), "substantially restrict[ing] the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 121 S. Ct. 2200 (2001).  The AEDPA provides that a federal habeas petition shall not be granted with respect to any claim adjudicated on the merits in state court unless the adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2).  The AEDPA further provides:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

The AEDPA's deferential standards of federal habeas review apply to claims which were "adjudicated on the merits" by the state court. 28 U.S.C. § 2254(d); *see also Jackson v. Johnson*, 194 F.3d 641, 651 (5th Cir. 1999), *cert. denied*, 120 S. Ct. 1437 (2000). The "adjudicated-on-the-merits" standard "does not speak to the quality of the process." *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001). "In the context of federal habeas proceedings, adjudication 'on the merits' is a term of art that refers to whether a court's disposition of the case was substantive as opposed to procedural." *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002) (*en banc*) (citing *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997)).

For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this court may grant federal habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 122 S. Ct. 194 (2001); *see also Williams v. Taylor*, 120 S. Ct. 1495, 1517 (2000).[3] In *Terry Williams v. Taylor*, the Supreme Court reviewed the AEDPA's "new constraint on the power of a federal

---

[3] On April 18, 2000, the Supreme Court issued two separate opinions, both originating in Virginia, involving the AEDPA, in which the petitioners had the same surname. *Terry Williams v. Taylor*, 120 S. Ct. 1495 (2000) involves 28 U.S.C. § 2254(d)(1), and *Michael Williams v. Taylor*, 120 S. Ct. 1479 (2000), involves 28 U.S.C. § 2254(e)(2). To avoid confusion, this court will include the full name of the petitioner when citing these two cases.

habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." 120 S. Ct. at 1523. In *Terry Williams*, the Supreme Court held that a state court decision is contrary to Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Terry Williams*, 120 S. Ct. at 1519. "[A] run-of-the-mill state-court decision applying the correct legal rule . . . to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause;" to warrant relief under § 2254(d)(1) the decision must have been "diametrically different from, opposite in character or nature from, or mutually opposed to" clearly established precedent. *Id.* at 1520 (quotations omitted).

Relief may also be granted if the state court decision rests on "an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). A state court may unreasonably apply federal law if it "identifies the correct legal rule from [the Supreme Court] cases but unreasonably applies it to the particular facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses

to extend that principle to a new context where it should apply." *Terry Williams*, 120 S. Ct. at 1520. An unreasonable application of federal law "is different from an incorrect application of federal law." *Id.* at 1522. To provide relief, a federal habeas court must not only conclude that "the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Penry v. Johnson*, 121 S. Ct. 1910, 1918 (2001) ("[E]ven if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable."); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001) ("Thus, a state court application may be incorrect in our independent judgment and, yet, reasonable."); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001) (stating that the AEDPA mandates relief in the case of a state court decision "that is not merely wrong but is so wrong that it is 'unreasonable'").

Federal courts reviewing a state court's factual determinations may grant relief only after finding that the state court's determination of fact was unreasonable in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(2). In reviewing such factual determinations, a federal habeas court must presume correct the factual findings of the state court, unless the petitioner "rebut[s] the presumption of

correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 1059 (1998).[4]

Dudley argues that the AEDPA's deferential review of state court convictions violates Article III of the United States Constitution. Courts have consistently rejected similar challenges, holding that deference to state court decisions under the AEDPA does not violate the Constitution. *See, e.g., Tucker v. Johnson*, 242 F.3d 617, 620 (5th Cir.), *cert. denied*, 122 S. Ct. 18 (2001); *Hughes v. Johnson*, 191 F.3d 607, 612 (5th Cir. 1999), *cert. denied*, 120 S. Ct. 1003 (2000). This court applies the AEDPA to Dudley's claims.

## B.    Summary Judgment

Both parties seek summary judgment in this case.[5] In ordinary civil cases, summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.

---

[4] The AEDPA also established strict standards limiting the availability of evidentiary hearings in federal court. *See* 28 U.S.C. § 2254(e)(2). Dudley makes an unsupported request for a hearing. (Docket No. 22 at 46). Dudley has not shown that the AEDPA would allow an evidentiary hearing in this case. *See Michael Williams*, 120 S. Ct. at 1490 (stating that it was "Congress' intent to avoid unneeded evidentiary hearings in federal habeas corpus"); Rule 8 of the Rules Governing Section 2254 Cases ("If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require.").

[5] In his reply to respondent's summary judgment motion, Dudley claims that partial summary judgment is appropriate in his favor. (Docket Entry No. 22 at 46). Dudley, however, does not specify the claims on which he moves for partial summary judgment.

R. Civ. P. 56(c); *Rojas v. TK Communication*, 87 F.3d 745, 747 (5th Cir. 1996).  A

petition for writ of habeas corpus is a civil action in federal court.  *See Archer v.*

*Lynaugh*, 821 F.2d 1094, 1096 (5th Cir. 1987).  "As a general principle, Rule 56 of

the Federal Rules of Civil Procedure, relating to summary judgment, applies with

equal force in the context of habeas corpus cases."  *Clark v. Johnson*, 202 F.3d 760,

764 (5th Cir.), *cert. denied*, 121 S. Ct. 84 (2000).  However, the Federal Rules of

Civil Procedure are applicable only to the extent they do not conflict with the habeas

rules.  *See* Rule 11 of the Rules Governing Section 2254 Cases.   In habeas

proceedings, a court's summary judgment review is circumscribed by the AEDPA.

*See Proctor v. Cockrell*, 283 F.3d 726, 729-30 (5th Cir. 2002).

Dudley presented many of his claims in state court.  The state courts

issued detailed findings of fact and explicit conclusions of law with respect to each

issue.  The AEDPA guides this court's summary judgment review.  When, as here,

a state prisoner's factual or legal allegations have largely been resolved by the state

courts, this court's summary judgment inquiry focuses on the application of 28 U.S.C.

§ 2254(d).

## III.   Procedural Default and Procedural Bar

### A.   The Applicable Legal Standards

When a state prisoner defaults his federal claims in state court under an independent and adequate state procedural rule, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 111 S. Ct. 2546, 2565 (1991).[6]   "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997) (citing *Coleman*, 111 S. Ct. at 2564-66), *cert. denied*, 118 S. Ct. 1811 (1998).   Comity and federalism require this court to honor the imposition of a state procedural limitation.

A state prisoner may also procedurally default his federal habeas claims by failing to exhaust available state court remedies.   Section 2254 provides that no habeas relief may be granted on unexhausted claims.   *See* 28 U.S.C. § 2254(b)(1).[7]

---

[6]   To show a fundamental miscarriage of justice, a petitioner must establish his actual innocence. *See Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).   Notwithstanding his claim that insufficient evidence supported his conviction, Dudley makes no effort to prove actual innocence.

[7]   However, a reviewing court may deny an unexhausted claim on the merits.   *See* 28 U.S.C. § 2254(b)(2).

Exhaustion requires that a petitioner's claims be fairly presented to the state courts before they can be considered on federal review. *See Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999) ("Applicants seeking habeas relief under § 2254 are required to exhaust all claims in state court prior to requesting federal collateral relief."). "A procedural default . . . occurs when a prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Nobles*, 127 F.3d at 420 (quoting *Coleman v. Thompson*, 111 S. Ct. 2546, 2557 n.1 (1991)). Article 11.071 § 5(a) of the Texas Code of Criminal Procedure prohibits a Texas court from considering a successive habeas petition on the merits unless the petition satisfies one of the exceptions set out in section 5(a)(1),(2), or (3).[8] The Fifth

---

[8] Article 11.071 § 5(a) provides:

(a) If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:

(1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;

(2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational

Circuit has held that Article 11.071 is an adequate state procedural bar because the Texas courts strictly and regularly enforce the rule. *See Barrientes v. Johnson*, 221 F.3d 741, 758-61 (5th Cir. 2000), *cert. dismissed*, 121 S. Ct. 902 (2001); *Muniz v. Johnson*, 132 F.3d 214, 221 (5th Cir.), *cert. denied*, 118 S. Ct. 1793 (1998). When the prisoner raises an unexhausted claim in a federal habeas action that would be barred under article 11.071 if presented in a successive state habeas application, the procedural bar also forecloses federal habeas relief.

## B.   Procedurally Barred Claims

Respondent argues that three of Dudley's claims are procedurally barred from consideration on federal review:

> (1)   the claim that the trial court violated Dudley's Sixth Amendment right to counsel by replacing his initial trial counsel;
>
> (2)   the claim that trial counsel failed adequately to investigate, develop, and present mitigating evidence at the punishment phase of trial; and

---

> juror could have found the applicant guilty beyond a reasonable doubt; or
>
> (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071 or 37.0711.

     (3)    the claim that insufficient evidence supported the jury's answer to the first ("future dangerousness") special issue.

The Court of Criminal Appeals held that Dudley's Sixth Amendment claim based on the replacement of his original attorney was procedurally barred. On February 10, 1998, Dudley filed his initial application for state habeas relief. (S.H. p. 2.). He did not include a Sixth Amendment claim based on the replacement of counsel. On July 17, 2000, after the State filed its proposed findings of fact and conclusions of law, Dudley filed a supplemental habeas application. The supplemental application raised two claims relating to the replacement of his original trial counsel. The state trial level habeas court found that the supplemental application was untimely and construed that filing as a successive habeas application. The Court of Criminal Appeals agreed and dismissed the successive habeas application as an abuse of the writ under Article 11.071, § 5. *Ex parte Dudley*, No. 46,854-02 (Tex. Crim. App. October 18, 2000) (unpublished). The Texas court's imposition of procedural bar prevents federal habeas review unless Dudley demonstrates cause and prejudice.

Dudley also raises two unexhausted claims. First, Dudley argues that trial counsel rendered ineffective assistance by failing to prepare and present mitigating testimony. Second, Dudley contends that insufficient evidence supported

the jury's affirmative answer to the future dangerousness special issue.[9] Dudley does not dispute that he failed to present these claims in state court. Article 11.071, § 5 would prevent Dudley from presenting these claims in a successive state habeas application. Unless Dudley demonstrates cause and prejudice, these claims are procedurally barred in this forum.

## C.  Cause and Prejudice

In his response to the summary judgment motion, Dudley contends that because he received inadequate representation from his state habeas counsel,[10] this court should allow federal habeas review of his claims. Dudley criticizes his state habeas counsel's choice of claims to advance and his failure to present all the issues Dudley raises in the federal petition. Dudley argues that the Texas guarantee of "competent" capital habeas representation should lead this court to forgive the procedural bar. Dudley also asks this court to create a due process entitlement to

---

[9] On direct appeal and on state habeas review, Dudley raised insufficiency of the evidence claims relating to his conviction and the jury's answer to the "anti-parties" special issue. The presentation of those related claims does not constitute the full and fair presentation of the instant claim challenging the future dangerousness determination.

[10] R. E. Wheelan represented Dudley on state post-conviction review.

effective habeas representation, the absence of which would remove any procedural bar.[11]

      Dudley failed to present his allegations of ineffective habeas representation to the state courts. His unexhausted allegations of cause are also procedurally barred on federal review. A procedurally defaulted claim cannot serve as "cause" for the procedural default that barred another claim, absent a separate showing of cause and prejudice. *See Edwards*, 529 U.S. at 451 ("In other words, ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim."). Dudley's allegation that his habeas counsel provided inadequate representation cannot serve

---

[11]   This court notes that Dudley only addresses his habeas counsel's allegedly deficient performance and does not address whether it resulted in prejudice. Both cause and prejudice are necessary to overcome a procedural bar. The failure to address prejudice alone defeats Dudley's argument against the procedural bar. *See Murray v. Carrier*, 477 U.S. 478, 494-95 (1986) (holding that a petitioner must demonstrate *both* cause and prejudice to overcome procedural default).

as cause that allows this court to consider the claims that were procedurally defaulted earlier in this case.[12]

Dudley's arguments fail on a separate ground as well. "[T]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). The Fifth Circuit has held that under 28 U.S.C. § 2254(i), the ineffective assistance of state habeas counsel cannot serve as cause that excuses procedural default. *See Beazley v. Johnson*, 242 F.3d 248, 271 (5th Cir.), *cert. denied*, 122 S. Ct. 329 (2001).

Even before the enactment of the AEDPA, the Supreme Court recognized that "[t]here is no constitutional right to an attorney in state postconviction proceedings." *Coleman*, 111 S. Ct. at 2566; *see also Murray v.*

---

[12] Dudley argues that the Fifth Circuit's opinion in *Welch v. Beto*, 355 F.2d 1016, 1020 (5th Cir.), *cert. denied*, 87 S. Ct. 88 (1966), requires this court to recognize a due process right to competent post-conviction counsel. In *Welch*, the Fifth Circuit intimated that a due process right may exist in state post-conviction proceedings. *Id.* The Fifth Circuit, however, recently explained the influence of the *Welch* decision as follows:

> While the *Welch* holding does hint at some form of due process right once a state decides to provide a non-constitutionally obligated service, the Supreme Court has spoken quite explicitly on this subject since *Welch* and has repeatedly emphasized that ineffective assistance of counsel in a post-conviction proceeding cannot serve as cause to excuse default in a federal habeas proceeding. To that extent, at least, *Welch* has been overruled and is no longer valid law in this circuit.

*In re Goff*, 250 F.3d at 276. The Fifth Circuit has foreclosed Dudley's reliance on *Welch*.

*Giarratano*, 109 S. Ct. 2765, 2769-71 (1989) (finding no constitutional right to appointed counsel in capital cases on state post-conviction review); *Pennsylvania v. Finley*, 107 S. Ct. 1990, 1993 ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further."). "Because a petitioner does not have a constitutional right to counsel in post-conviction habeas proceedings, it follows that a petitioner cannot claim ineffective assistance of counsel in such proceedings." *Irving v. Hargett*, 59 F.3d 23, 26 (5th Cir. 1995), *cert. denied*, 116 S. Ct. 929 (1996); *see also In re Goff*, 250 F.3d 273, 275 (5th Cir. 2001) ("The Supreme Court has explicitly held that there is no protected Sixth Amendment right to counsel in state post-conviction proceedings."); *Beazley*, 242 F.3d at 271 (finding claims involving representation during state habeas review to be barred by the AEDPA); *Wheat v. Johnson*, 238 F.3d 357, 361 (5th Cir.) (finding that "infirmities in state habeas proceedings are not proper grounds for federal habeas relief"), *cert. denied*, 121 S. Ct. 2226 (2001).

Because there is no constitutional right to habeas representation, the Fifth Circuit has held that ineffective assistance of habeas counsel cannot serve as cause excusing procedural default, even in a capital case. *See Martinez v. Johnson*, 255 F.3d 229, 240 (5th Cir. 2001) (finding that "ineffectiveness of habeas counsel cannot provide cause for a procedural default"), *cert. denied*, 122 S. Ct. 1175 (2002);

*In re Goff*, 250 F.3d at 276 (recognizing that the Supreme Court "has repeatedly emphasized that ineffective assistance of counsel in a post-conviction proceeding cannot serve as cause to excuse default in a federal habeas proceeding"); *Jones v. Johnson*, 171 F.3d 270, 277 (5th Cir.) ("The law is well-established, however, that such error committed in a post-conviction application, where there is no constitutional right to counsel, cannot constitute cause."), *cert. denied*, 120 S. Ct. 29 (1999); *Callins v. Johnson*, 89 F.3d 210, 212 (5th Cir.) (finding that "no error by habeas counsel can ever constitute cause for abusing the writ"), *cert. denied*, 117 S. Ct. 530 (1996).

Dudley has not provided this court "with any argument regarding why [his] argument rests on anything other than the incompetence of [counsel] during state post-conviction proceedings." *See Martinez*, 255 F.3d at 245-46.  The AEDPA prevents any statutory entitlement to competent habeas counsel from being a proper ground to overcome a procedural bar.  Dudley's failure to show either cause or prejudice prevents federal consideration of his procedurally barred claims.

This court will consider those claims properly presented for federal consideration.

## IV.    The Trial Court's Limitation of Punishment Phase Evidence

Dudley argues that the trial court violated his Eighth Amendment right to full and fair sentencing by limiting the presentation of evidence in the punishment phase of trial. Dudley bases this claim on the trial court's exclusion of some of his mother's testimony and testimony by a witness allegedly demonstrating Dudley's remorse for the crime. Respondent contends that summary judgment is appropriate with respect to both of these allegations.

### A.    The Exclusion of Shirley Dudley's Testimony

During the punishment phase of trial, the defense called Dudley's mother, Shirley Dudley, as a witness. After some brief introductory testimony, the trial court held a discussion off the record. (S.F. Vol. XXXIV, p. 649). Trial counsel questioned Dudley's mother concerning her proposed testimony, as follows:

| Trial Counsel: | Are you asking this jury panel to return a life sentence against Marion? |
|---|---|
| Shirley Dudley: | Yes. |
| Trial Counsel: | How are you going to feel if the State of Texas executes Marion? |
| Shirley Dudley: | Well, excuse me.  My children are my life. |

| | |
|---|---|
| Trial Counsel: | What impact would death by lethal injection have on you if Marion is put to death? |
| Shirley Dudley: | I would never be the same. |
| Trial Counsel: | Have you discussed with your husband what impact a death by lethal injection of Marion would have on him? |
| Shirley Dudley: | No. |
| Trial Counsel: | Have you discussed this with either of your two children? |
| Shirley Dudley: | Yes. |
| Trial Counsel: | What statements have they made to you about how it would affect them? |
| Shirley Dudley: | Well, [his sister] Tamara said if this happened, she would want to die, too, so--we're real close. |

(S.F. Vol. XXXIV, pp. 650-51).

After this proffer, the prosecutor stated that the State had no objection to Shirley Dudley's personal supplication for compassion. (S.F. XXXIV, p. 651). The prosecutor did object on relevance grounds to Shirley Dudley's testifying as to the impact a death sentence for Dudley would have on Dudley's sister. (S.F. Vol. XXXIV, pp. 651-52). Dudley's counsel argued that evidence of the impact of his

execution on his family should be admissible in the same manner as victim impact evidence is admissible under *Payne v. Tennessee*, 111 S. Ct. 2597 (1991).  After hearing the arguments of counsel, the trial court held that the defense could not elicit testimony from Shirley Dudley beyond her request for mercy, disallowing testimony as to how a death sentence would impact Dudley's family members.  (S.F. Vol. XXXIV, pp. 652-54).[13] Before the jury, trial counsel only asked Shirley Dudley if she wanted the jury to spare her son's life.  (S.F. Vol. XXXIV, p. 655).

On direct review, Dudley argued that his family's feelings about his future execution constituted valid mitigating evidence.  Following Texas precedent, the Court of Criminal Appeals held that Dudley's "proposed testimony as to the potential effect of execution on his family does not pertain to his character, background, or record, or the circumstances surrounding the offense. . . . [T]he trial judge did not abuse her discretion in excluding this evidence."  Opinion, at 20 (citing

---

[13] Specifically, the trial court noted that

> I'm sure if Adolph Hitler had been put to trial and had any kin, they would have been induced to testify the same.  I mean--the whole purpose of the rule of law is for decisions to be made rationally, not emotionally.  This would open up a Pandora's box then for the State to come back--No.  I just . . . Under our law, "mitigation" is defined as reducing a defendant's moral blameworthiness.  This testimony does not go to any of the special issues.  This does not go into the background or character, circumstances of the offense.  The objection is sustained.

(S.F. Vol. XXXIV, p. 653-54).

*see Fuller v. State*, 827 S.W.2d 919, 935-36 (Tex. Crim. App. 1992)). This court will review that determination under the AEDPA.[14]

"The well-settled rule is that the state may not prevent the defendant from introducing any mitigating evidence at the capital sentencing phase." *Muniz*, 132 F.3d at 221. The Supreme Court has defined mitigating evidence as "'any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'" *Eddings v. Oklahoma*, 102 S. Ct. 869, 874 (1982) (quoting *Lockett v. Ohio*, 98 S. Ct. 2954, 2964-65) (1978)). "Any exclusion of the compassionate or mitigating factors stemming from the diverse frailties of humankind that are relevant to the sentencer's decision would fail to treat all persons as uniquely individual human beings." *McCleskey v. Kemp*, 107 S. Ct. 1756, 1173-74 (1987) (citations and internal quotation marks omitted). The Supreme Court, however, refuses to limit "the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." *Lockett*, 98 S. Ct. at 2965 n.12; *see also Franklin v. Lynaugh*, 108 S. Ct. 2320, 2334 (1988) (O'Connor, J. concurring)

---

[14] Dudley also raised this claim on state habeas review. The state habeas court procedurally barred the claim because Dudley had already presented the issue on direct review. In the alternative, the state habeas court concluded that Dudley "failed to demonstrate that he was harmed by the trial court disallowing the victim impact evidence." (S.H., p. 102).

("We have defined mitigating circumstances as facts about the defendant's character or background, or the circumstances of the particular offense, that may call for a penalty less than death.").

While a jury may--indeed must--consider evidence of a defendant's character, background, or circumstances of the offense, a jury may not base its punishment decision on the basis of sympathy. "It would be very difficult to reconcile a rule allowing the fate of a defendant to turn on the vagaries of particular jurors' emotional sensitivities with our longstanding recognition that, above all, capital sentencing must be reliable, accurate, and nonarbitrary." *Saffle v. Parks*, 110 S. Ct. 1257, 1263 (1990); *see also Johnson v. Texas*, 113 S. Ct. 2658, 2671 (1993) (finding that a capital jury need not be able to dispense mercy on basis of sympathetic response to defendant); *California v. Brown*, 107 S. Ct. 837, 840 (1987) (permitting an instruction that the jury could not base its sentencing decision on sympathy). The Supreme Court has held that "[i]t is no doubt constitutionally permissible, if not constitutionally required, for the State to insist that the individualized assessment of the appropriateness of the death penalty be a moral inquiry into the culpability of the defendant, and not an emotional response to the mitigating evidence." *Parks*, 110 S. Ct. at 1262 (citations and quotations omitted). The Fifth Circuit has rejected the argument that "the jury should be allowed to avoid answering the special issues

30

affirmatively because they feel sympathy . . . ." *Johnson v. Collins*, 964 F.2d 1527, 1533 (5th Cir.), *cert. denied*, 113 S. Ct. 4 (1992).

Dudley argues that "[t]he fact that a person's family loves him is evidence of an element of his character that might be used by a sentencer as a basis for a sentence less than death." (Docket Entry No. 22). Dudley correctly points out that a court cannot prevent the presentation of evidence from which the jury could draw inferences that "would be 'mitigating' in the sense that they might serve 'as a basis for a sentence less than death.'" *Skipper v. South Carolina*, 106 S. Ct. 1669, 1671-70 (1986) (quoting *Lockett*, 98 S. Ct. at 2965). The trial court, however, did not prevent the introduction of evidence relating to Dudley's family background. Dudley's mother testified that they were a "close-knit group," (S.F. XXXIV, p. 655), allowing the jury to understand that his family loved him. The excluded testimony focused on his sister's future, and hypothetical, reaction if Dudley received a death sentence and was not proper mitigating evidence.

The testimony about the reaction Dudley's sister would have if Dudley received a death sentence did not bear on Dudley's character, prior record, or the circumstances of his offense. The testimony would only invoke sympathy, not guide

the jury's answers to the special issues.[15]  The excluded testimony was irrelevant to the special issues, which focus on a defendant's future danger to society, his participation in the murder, and circumstances that mitigate against a sentence of death.  The proposed testimony would not mitigate against a sentence of death.  *See Brock v. McCotter*, 781 F.2d 1152, 1158 (5th Cir.) ("To require Texas courts to consider as mitigating, evidence which bears neither on the defendant's culpability nor on society's deterrent objectives is, we think, unwarranted."), *cert. denied*, 106 S. Ct. 2259 (1986).

The trial court did not violate Dudley's constitutional rights by limiting his mother's testimony.  The state court determination was not contrary to, or an unreasonable application of, federal law.  *See* 28 U.S.C. § 2254(d)(1).

**B.  The Exclusion of Evidence of Remorse**

Dudley contends that the trial court violated his constitutional rights by excluding testimony that he claims was evidence of his remorse for the murders.  During the penalty phase of trial, the State called two witnesses who knew Dudley as

---

[15] Respondent argues that the non-retroactivity principle of *Teague v. Lane*, 109 S. Ct. 1060 (1989), bars habeas relief.  Respondent characterizes Dudley's claims as an attempt to create a constitutional rule requiring the admission of any family member's sympathetic testimony. Dudley's claim, however, does not seek a modification of *Payne v. Tennessee*, 111 S. Ct. 2597 (1991), to allow defensive execution-impact testimony.  The analysis which follows above requires the application of constitutionally-recognized principles to the punishment phase of a capital trial.  This court will address Dudley's claims on the merits.

a youth.  Dr. Eddie B. Thomas, assistant superintendent for Tuscaloosa City Board

of Education, testified that Dudley had been expelled from public school for an

altercation in which he wounded a fellow student by cutting him.  (S.F. Vol. XXXIII,

p. 463).  On cross-examination, Dr. Thomas testified that he had known Dudley for

a long period and that he was surprised by Dudley's capital murder charge.  (S.F. Vol.

XXXIII, pp. 470-71).   The State also called Cecil Hopkins, Dudley's juvenile

probation officer.  (S.F. Vol. XXXIII, pp. 476).  Hopkins testified about Dudley's

legal problems in Alabama, including criminal charges for receiving stolen property,

burglary of a motor vehicle, attempted murder, and probation violations.  (S.F. Vol.

XXXIII, pp. 476-502).

During the punishment phase, defense counsel made the following

request outside the jury's presence:

> Judge, yesterday after Mr. Thomas has testified, Mr.
> Hopkins, a probation officer from Tuscaloosa–permission
> was given by the Court to talk to the Defendant, Marion
> Dudley.  Those two witnesses went over to talk with Mr.
> Dudley, both of them embraced him, at which time after
> they embraced him, the Defendant Marion Dudley
> proceeded to cry, which was obvious to myself and to other
> witnesses in the courtroom.  We would like to call a
> witness to testify to that fact to show--to humanize the
> Defendant, to show for whatever--I don't know how the
> jury would take that, but the jury could take that as some
> form of remorse, some form of concern, some form of
> moral response to what is happening here.  And we believe

> it to be relevant testimony and relevant to issue number 3.
> And for those reasons, we would like [t]he Court to allow
> us to call a witness to testify to that fact.

(S.F. Vol. XXXIV, pp. 659-60).   Trial counsel suggested that they could call their

paralegal to testify that she had observed the crying episode.  (S.F. Vol. XXXIV, p.

661).   The State objected.   (S.F. Vol. XXXIV, pp. 660-661).   The trial court

disallowed that testimony, stating that "[i]f this were to be permitted, then either the

State or the Defense, then, would have opportunities to stage events." (S.F. Vol.

XXXIV, p. 662).

On direct review, Dudley argued that the trial court erred in excluding

his proffered evidence of remorse.  The Court of Criminal Appeals recognized that

a court has broad discretion in excluding evidence, but held that the trial court abused

its discretion in refusing to allow the evidence of remorse.  The Court of Criminal

Appeals held that "[a] rational jury could possibly have interpreted appellant's

weeping as evidence of remorse.  Such evidence is relevant to appellant character,

moral blameworthiness, and future dangerousness." Opinion, at 21.  However, the

Court of Criminal Appeals concluded that the error was harmless.  The Court of

Criminal Appeals explained its ruling:

> In this case, although the exclusion of evidence of the
> evidence was error, it is doubtful the jury would have given
> the evidence much weight, if any.   Defense counsel

admitted he did not know why appellant had cried and could not ensure a connection between this behavior and the immediate offense. Though he may have felt remorse, appellant's tears could also reflect feelings of fear, frustration, or embarrassment in greeting authority figures from his past under these circumstances. Further, this evidence was not tied to any other evidence of remorse and did not appear to be integral to a specific theory advanced by the defense.

On the other hand, the evidence against appellant was extensive and the facts of the offense were particularly heinous. Additionally, appellant had a prior record of violent and drug-related offenses and offered little mitigating evidence on his behalf. Even if the evidence had been admitted and the jury did interpret appellant's behavior as remorseful, it is doubtful that such a small display of remorse exhibited so long after the date of the offense would sway the rational factfinder to change its result. Therefore, we hold the error was harmless beyond a reasonable doubt.

Opinion, at 22.[16]

In *Chapman v. California*, the Supreme Court recognized that "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." 87 S.

---

[16] Dudley also raised this claim on state habeas review. The state habeas court procedurally barred the claim as raised and rejected on direct review. (S.H. p. 102). Alternatively, the state habeas court found that "the applicant has failed to demonstrate that the trial court's refusal to permit evidence of the applicant's alleged remorse contributed to his conviction or the punishment." (S.H. p. 102).

Ct. 824, 827 (1967). The Supreme Court in *Chapman* defined the harmless error test applicable on direct review: "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 828. In denying Dudley's claim, the Court of Criminal Appeals applied the *Chapman* standard and found the error to be harmless beyond a reasonable doubt. Opinion, at 22. The Court of Criminal Appeals' reliance on the *Chapman* standard was not contrary to federal law. *See* 28 U.S.C. § 2254(d)(1).

In *Brecht v. Abrahamson*, 113 S. Ct. 1710 (1993), the Supreme Court clarified the application of harmless error on collateral review, holding that "habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.* at 1722. The standard established in *Brecht* requires a habeas court to determine "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (quoting *Kotteakos v. United States*, 66 S. Ct. 1239, 1253 (1946)).[17]

"[U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility

---

[17] Dudley does not argue that this claim presents "structural error" as to which no harmless error analysis is appropriate and which "requires automatic reversal." *See Brecht*, 113 S. Ct. at 1717; *Hogue v. Johnson*, 131 F.3d 466, 499 n.60 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 1297 (1998).

that it contributed to the verdict.  It must have had a substantial effect or influence in determining the verdict."  *O'Neal v. McAninch*, 115 S. Ct. 992, 994 (1995).  Under the *Brecht* analysis, the government must affirmatively persuade the court of the harmlessness.  *See id.*  However, if the court is "'in virtual equipoise as to the harmlessness,' under the *Brecht* standard, of the error, then we must conclude that it was harmful."  *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir.) (citing *O'Neal*, 115 S. Ct. 992), *cert. denied*, 117 S. Ct. 150 (1996).

Since the enactment of the AEDPA, courts have questioned the continued viability of the *Brecht* analysis applied to the review of state court convictions.  "[T]here has been some doubt expressed with respect to whether the standard in *Brecht* is still viable after the enactment of the AEDPA."  *Tucker*, 242 F.3d at 629 n.16.  Before the AEDPA, federal habeas courts consistently applied the *Brecht* standard.  Under the AEDPA, a court may either apply the *Brecht* standard and determine whether the error had "substantial and injurious effect or influence" on the jury's verdict, or apply the standard of 28 U.S.C. § 2254(d)(1) and evaluate whether the state court applied the *Chapman* beyond a reasonable doubt standard in an unreasonable manner.[18]  "The *Brecht* standard in this setting is more rigorous than the

---

[18]   "Harmless error is a mixed question of law and fact" reviewed under 28 U.S.C. § 2254(d)(1).  *Johnson v. Gibson*, 254 F.3d 1155, 1166 (10th Cir.), *cert. denied*, 122 S. Ct. 566 (2001).

determination under the AEDPA . . . ." *Bryson v. Ward*, 187 F.3d 1193, 1205 n.10 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 1566 (2000); *see also Anderson v. Cowan*, 227 F.3d 893, 898 n.3 (7th Cir. 2000).

The Fifth Circuit has yet to determine whether a *Brecht* or section 2254(d)(1) analysis applies under the AEDPA. Other circuit courts have addressed the issue without resolving it, instead finding habeas relief unavailable under either standard. *See, e.g., Loliscio v. Goord*, 263 F.3d 178, 185 n.1 (2nd Cir. 2001); *Denny v. Gudmanson*, 252 F.3d 896, 905 n.4 (7th Cir.), *cert. denied*, 122 S. Ct. 311 (2001); *Anderson*, 227 F.3d at 898 n.3; *Whitmore v. Kemna*, 213 F.3d 431, 433-34 (8th Cir. 2000); *Bryson*, 197 F.3d at 1205 n.10. Three circuits have held that the *Brecht* harmless error standard survived the AEDPA. *See Herrera v. Lemaster*, __ F.3d __, 2002 WL 1965343 (10th Cir. Aug. 23, 2002); *Sanna v. Dipaolo*, 265 F.3d 1, 14 (1st Cir. 2001); *Nevers v. Killinger*, 169 F.3d 352, 371 (6th Cir.), *cert. denied*, 119 S. Ct. 2340 (1999). This court need not decide the issue, because Dudley's claims fail under both the AEDPA and *Brecht* standards.[19]

---

[19] The parties have not briefed whether the *Brecht* standard survived the enactment of the AEDPA. The Fifth Circuit, however, has employed the *Brecht* standard since the effective date of the AEDPA. *See, e.g., Tucker*, 242 F.3d at 629; *Corwin v. Johnson*, 150 F.3d 467, 476-77 (5th Cir.), *cert. denied*, 119 S. Ct. 613 (1998).

Dudley argues that "[t]he fact that [he] cried, for any reason, could have been interpreted by the jury, as evidence of remorse for his participation in the crime." (Docket Entry No. 22). As the Court of Criminal Appeals noted, the jury could have found several explanations for his tears, including rejecting them as opportunistic. At trial, defense counsel admitted that there was no basis to ensure a connection between Dudley's tears and any feeling of remorse. Dudley presented no other testimony or earlier behavior that would indicate his regret for the murders.

The probative value of the crying episode as evidence of "remorse" is undercut by Dudley's own testimony in the punishment phase. When Dudley took the stand in the punishment phase, he disclaimed any involvement in the murders. (S.F. Vol. XXXIV, p. 779). Dudley's testimony undercuts his claim that the jury would have considered him remorseful because he cried when he encountered his juvenile probation officer, who had no connection with the crime of conviction.

The weak nature of Dudley's evidence of alleged remorse sharply contrasts with the evidence introduced in the punishment phase. The State presented evidence of Dudley's extensive and violent criminal record, including repeated convictions for narcotics trafficking. Such evidence indicated Dudley's future danger to society. The evidence as to the shootings, which included the murder of a pregnant woman and two people simply visiting the home, further undercuts any reasonable

likelihood that the jury would regard testimony that Dudley cried when he saw his juvenile probation officer as "reducing Defendant's moral blameworthiness." Given the record, it is not reasonably likely that a jury would have been swayed to impose life imprisonment by Dudley's unexplained weeping when he saw his juvenile probation officer. As the Court of Criminal Appeals stated, "[e]ven if the evidence had been admitted and the jury did interpret [Dudley's] behavior as remorseful, it is doubtful that such a small display of remorse exhibited so long after the date of the offense would sway the a [*sic*.] rational factfinder to change its result." Opinion, at 22.

The trial court's failure to allow testimony of the crying episode did not adversely impact the jury's determination of the special issues. Under the *Brecht* standard, the trial court's error was harmless because it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 113 S. Ct. at 1722. Under the AEDPA standard, the state court did not unreasonably conclude that the trial court's error was harmless beyond a reasonable doubt. *See* 28 U.S.C. § 2254(d)(1). This claim is denied.

## V.    The Claim Involving Trial Counsel's Representation

Dudley claims that his trial counsel provided ineffective assistance by failing to request a lesser included offense instruction on robbery. Dudley also claims that trial counsel should have objected to certain evidence recovered incident to his arrest in North Carolina. The Court of Criminal Appeals rejected each of these claims on direct review.[20]  This court reviews the state court determinations under the AEDPA.[21]

---

[20]  Dudley also raised the claims on state post-conviction review.

[21]  Dudley also raised two other claims based on the Sixth Amendment. Dudley argues that the trial court violated his Sixth Amendment rights by replacing his original trial counsel. The state court's procedural bar prevents consideration of that claim. However, this court notes that Dudley authorized the substitution of counsel and expressed no objection to his new attorney. Nor has Dudley shown that the attorneys who represented him at trial provided ineffective assistance. Dudley's Sixth Amendment claim based on the substitution of counsel is without merit. Dudley also argues that trial counsel failed to present certain mitigating evidence in the punishment phase of the trial. Dudley's failure to exhaust that claim prevents federal review. In addition, trial counsel apparently made a thorough inquiry into Dudley's background. State Habeas Record at 62-63. Trial counsel presented substantial mitigating evidence in the punishment phase, including significant evidence that Dudley would not be a future danger to society. The additional evidence Dudley claims should have been presented is either cumulative of that presented at trial, "double edged" because it could be viewed as both aggravating and mitigating, or inherently weak in light of the State's strong punishment phase case. Dudley could not show prejudice under *Strickland* due to the State's overwhelming punishment phase evidence. If this Court considered Dudley's procedurally barred claims, they would be denied as meritless.

## A.   The *Strickland* Standard of Ineffective Assistance

Under *Strickland v. Washington*, 104 S. Ct. 2052 (1984), an ineffective assistance claim requires a showing of objectively unreasonable performance, coupled with a reasonable probability that, but for the deficient performance, the outcome of the proceeding would have been different.[22]  In order to establish that counsel's performance was deficient, a convicted defendant must show that the representation "fell below an objective standard of reasonableness."  *Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994), *cert. denied*, 115 S. Ct. 908 (1995).  This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, and produce an unreliable result.  *See Strickland*, 104 S. Ct. at 2064. An attorney's performance "enjoys a strong presumption of adequacy," *United States v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995), and courts "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

---

[22]  In his response to the summary judgment motion, Dudley argues that *United States v. Cronic*, 104 S. Ct. 2039 (1984), instead of *Strickland* should govern this claim.  Under *Cronic*, prejudice may be presumed in some exceptional cases of egregious performance by counsel.  Dudley has not exhausted a *Cronic* claim in state court.  In fact, Dudley only raised a *Cronic* issue after Respondent filed the pending summary judgment motion, raising questions concerning his ability to advance new claims at this juncture.  Aside from the obvious procedural and exhaustion problems, the facts of this case do not require the court to apply the *Cronic* standard.  The court will evaluate Dudley's claims under *Strickland*'s performance and prejudice standard.

A petitioner must not only show deficient performance, but also prejudice. He "must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (quoting *Strickland*, 104 S. Ct. at 2068). A failure to establish either deficient performance or actual prejudice makes it unnecessary to examine the other prong. *See Strickland*, 104 S. Ct. at 2069; *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir.) (stating that "a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a movant's failure to meet either prong of the test"), *cert. denied*, 116 S. Ct. 557 (1995); *Black v. Collins*, 962 F.2d 394, 401 (5th Cir.) ("A court evaluating a claim of ineffective assistance need not address the reasonableness component first, and if a defendant fails on one part it need not address the other."), *cert. denied*, 112 S. Ct. 2983 (1992). Ineffectiveness of counsel is a mixed question of law and fact. *See Strickland*, 104 S. Ct. at 2070.

This court assesses trial counsel's representation under these standards.

### B.     The Claim of Trial Counsel's Failure to Request a Lesser-Included-Offense Instruction on Robbery

Dudley claims that trial counsel rendered ineffective assistance by failing to request a lesser included offense instruction on robbery. Dudley points to two

factors which he contends would allow conviction for robbery rather than capital murder. The first is the fact that no witness testified that he or she saw Dudley commit the murders. The second is the testimony of Brevis Ned that he saw Dudley leave the Tovars' house on the night of the murders and drive away in a van before hearing any gunshots. (S.F. Vol. XXIII, pp. 370-71). Dudley argues that this testimony shows that "the first shots were not fired until Mr. Dudley had already left the house and started down the street." (Docket Entry No. 10 at 5). Dudley contends that the combination of these facts would allow a reasonable jury to find him guilty only of robbery.

A death sentence may not be imposed if the jury was not permitted to consider a lesser included offense that was supported by the evidence. *See Beck v. Alabama*, 100 S. Ct. 2382, 2390 (1980); *Lincecum v. Collins*, 958 F.2d 1271, 1274-75 (5th Cir.) (applying *Beck* when "a trial judge refuses to give an instruction which is available under state law"), *cert. denied*, 113 S. Ct. 417 (1992). In *Beck*, the Supreme Court held unconstitutional a state law that prohibited lesser included offense instructions in capital cases. The Court's concern in the *Beck* case was that "a jury convinced that the defendant had committed some violent crime but not convinced that he was guilty of a capital crime might nonetheless vote for a capital conviction if the only alternative was to set the defendant free with no punishment at all." *Schad*

*v. Arizona*, 111 S. Ct. 2491, 2504 (1991).  The rule in the *Beck* case "eliminate[d] the distortion of the factfinding process that is created when the jury is forced to an all-or-nothing choice between capital murder and innocence." *Spaziano v. Florida*, 104 S. Ct. 3154, 3159 (1984).

"Although *Beck* itself spoke only to a statute under which the judge could not give the requested instruction, [the Fifth Circuit has] held that its rationale applied equally to cases in which a trial judge refuses to give an instruction which is available under state law." *Lincecum*, 958 F.2d at 1275; *see also East v. Scott*, 55 F.3d 996, 1005 (5th Cir. 1995); *Dowthitt v. Johnson*, 230 F.3d 733, 737 n.37 (5th Cir. 2000), *cert. denied*, 121 S. Ct. 1250 (2001).  To merit habeas relief based on the failure to deliver a lesser included offense instruction, a petitioner must demonstrate that "the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Jones v. Johnson*, 171 F.3d 270, 274 (5th Cir. 1999), *cert. denied*, 120 S. Ct. 29 (1999); *see also Dowthitt*, 230 F.3d at 737 n.37; *East*, 55 F.3d at 1005.  A lesser included offense instruction is not appropriate unless a rational jury could have acquitted Dudley on the offense of capital murder and convicted him of robbery.

The fact that Dudley did not request a lesser included offense instruction affects the analysis of the ineffective assistance of counsel claim.  On state habeas

review, trial counsel submitted an affidavit stating that he strategically chose not to

seek an instruction on robbery because he concluded that the evidence did not warrant

such an instruction. (S.H. at 63). Trial counsel explained that "there was no evidence

to support an argument that Mr. Dudley was guilty only of robbery and not a party to

the capital murder." (S.H. p. 63). A federal habeas court must show deference to

such a strategic decision, if reasonable in light of the evidence. *See Strickland*, 104

S. Ct. at 2066. Under the *Strickland* standard, federal habeas relief is only available

if Dudley first demonstrates that trial counsel's decision not to request a robbery

instruction fell below objective standards of reasonableness.

The first step in analyzing counsel's decision is to determine whether a

lesser included offense instruction was available under state law. Under Texas law,

a defendant is entitled to a lesser included offense instruction only if the lesser

offense is included within the proof necessary to establish the charged offense. *See*

*Solomon v. State*, 49 S.W.3d 356, 368 (Tex. Crim. App. 2001). Second, there must

be some evidence in the record that would permit the jury to find that the defendant

would only be guilty of the lesser offense. *See id.* at 369. As one of the theories at

trial, the State sought to prove that Dudley committed capital murder because he

intentionally killed in the course of a robbery. The Court of Criminal Appeals found

that robbery was included within the proof necessary to establish one of the capital

murder theories at trial.  Opinion, at 10.  The Court of Criminal Appeals focused on whether the evidence would lead a rational juror to conclude whether Dudley was only guilty of robbery.  That court rejected Dudley's arguments that the absence of a witness who could testify that Dudley fired at least one of the fatal shots and the testimony of Brevis Ned proved that Dudley could not have committed capital murder.

The trial court's instructions presented four separate theories under which the jury could convict Dudley of capital murder: (1) he murdered at least two of the victims; (2) he acted as a party to the murder of two victims; (3) he murdered Jose Tovar during the course of the robbery; or (4) he acted as a party to the murder of Jose Tovar. (S.F. Vol. I-A, pp. 399-400).  Ned testified that before he heard shots fired, he saw Dudley outside the Tovar house.  Brevis Ned's testimony at trial conflicted with the account of another witness, who testified that he heard shots fired, saw two men exit the house and return, and then heard more shots fired. (S.F. XXIV, p. 490).  After hearing the second round of shots fired, the witness saw men leaving the Tovar house in a van. (S.F. XXIV, p. 492).

Ned's testimony provided additional evidence of Dudley's presence in the Tovar house on the night of the murders.  Even if the jury believed Ned's testimony that Dudley had left the house before any shots were fired, and the jury

disbelieved the circumstantial evidence that Dudley was the shooter, the law of the parties would still support a capital murder conviction. A lesser included offense instruction on robbery was not required.

The trial court instructed the jury that Dudley could be convicted as a party "if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both." (Trans. Vol. I-A, p. 399). The trial court instructed that Dudley could be responsible for any offense "committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense." (Trans. Vol. I-A, p. 399). The trial court's explanation of the criminal responsibility of a party correctly reflected Texas law. *See* TEX. PENAL CODE ANN. §§ 7.01, 7.02. Under Texas law, the jury could convict Dudley of capital murder because of his status as a party to any of the murders, even if he did not pull the trigger himself. *See Montoya v. Scott*, 65 F.3d 405, 415 (5th Cir. 1995) (finding that "Texas' 'law of parties' may support a conviction for capital murder"), *cert. denied*, 517 U.S. 1133 (1996).

The jury's general verdict showed either that the jury believed Dudley had himself shot the victims or was a party to the murders. *See Turner v. United*

*States*, 90 S. Ct. 642, 654 (1970) ("The general rule is that when a jury returns a guilty verdict on an charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged."). The Court of Criminal Appeals found "no evidence which would indicate [Dudley] committed robbery that night, but was not at least a party to capital murder." Opinion, at 11. Dudley has not rebutted the presumptive correctness of this finding by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Even considering Brevis Ned's testimony, the evidence at trial would not require a conviction for robbery, rather than for capital murder. The Court of Criminal Appeals noted:

> Ned's testimony taken as a whole proved appellant's involvement in the incident, because Ned identified appellant as one of the assailants present that night. Thus, even if the jury believed every aspect of Ned's testimony, although it would make it difficult for appellant himself to have fired the shots, it would not at all contradict the State's theory that appellant aided, encouraged, or attempted to aid [Brown] in committing the offense of capital murder.

Opinion, at 11. Trial testimony showed that Dudley participated in the robbery, threatened the victims, held them at gunpoint, and, at least, aided in the murders. The evidence at trial did not limit Dudley's culpability only to robbery. Because the evidence did not support a conviction for robbery but preclude capital murder, Dudley's allegations do not demonstrate the need for a lesser included offense instruction.

Trial counsel reviewed the evidence and did not request a lesser included offense instruction because the evidence showed Dudley's role as at least a party to the offense. Trial counsel did not provide ineffective assistance in failing to request an unwarranted instruction. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) ("[F]ailure to assert a meritless objection cannot be grounds for a finding of deficient performance."), *cert. denied*, 119 S. Ct. 418 (1998); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."), *cert. denied*, 115 S. Ct. 432 (1994).

Even considering Dudley's construction of the facts, he has not provided a basis to assume that the jury would not convict him as a party to the capital murder. There is no reasonable probability of a different result had counsel requested a robbery instruction. The state court reasonably concluded that Dudley failed to demonstrate both *Strickland* prongs with respect to this claim. This claim is without merit. *See* 28 U.S.C. § 2254(d)(1).

## C. The Claim of Trial Counsel's Failure to Object to Allegedly Inadmissible Evidence

In the guilt-innocence phase of trial, the State produced evidence seized incident to Dudley's arrest in North Carolina, including a large amount of money, a false identification, recently purchased electronic items, a wanted poster with

Dudley's picture, a knife, a pair of handcuffs, and a stun gun.  On both direct appeal and habeas review, Dudley argued that trial counsel rendered ineffective assistance by failing to challenge the admission of the knife, handcuffs, and stun gun as irrelevant.  Dudley did not challenge the admission of the money, false identification, wanted poster, or electronic items.

On direct appeal, the Court of Criminal Appeals found that the challenged items had no relevance to the murders for which the State tried Dudley. Because the items suggested Dudley's involvement in other violent conduct, the Court of Criminal Appeals held that the evidence "was irrelevant to the charged offense and its prejudicial nature substantially outweighed its probative value." Opinion, at 12.  The Court of Criminal Appeals held that trial counsel was deficient in failing to object to the evidence.  However, the Court of Criminal Appeals found that the introduction of the evidence did not create a reasonable probability of a different outcome, noting that the improperly admitted evidence "pales in comparison to the gravity of the offense," and that the State did not emphasize the challenged items. Opinion, at 13.  The Court of Criminal Appeals held that Dudley had failed to prove *Strickland*'s prejudice prong.

Dudley also raised this claim on state habeas review.  Even though the state habeas court procedurally rejected the claim because it had already been raised on direct review, the state habeas also considered the claim on the merits.

In an affidavit, trial counsel explained that his strategy had been to cross-examine witnesses with respect to the three items.  Trial counsel stated that he did not object to their admission "[b]ecause of the other overwhelming, damning evidence that was found at the scene of [Dudley's] arrest that connected him to the commission of the instant offense, the admission of these three pieces of evidence in my opinion were not critical and seemed inconsequential at the time of trial."  (S.H. p. 64).  On that basis, the state habeas court alternatively found that trial counsel did not provide ineffective assistance by failing to object to the three challenged items.  (S.H. p. 98).

Dudley renews this claim in these proceedings, arguing that trial counsel's actions cannot properly be characterized as a strategic decision and that the introduction of the three items seriously prejudiced his defense.  Respondent responds that Dudley has failed to prove prejudice under the *Strickland* standard and that the failure to object to the evidence does not undermine confidence in the jury's verdict.[23]

_____

[23] Respondent does not concede that trial counsel rendered deficient performance in this case.  Respondent argues that trial counsel made a legitimate strategical decision not to object to the admission of the three items.  This court assumes, without deciding, the state court's decision with respect to *Strickland*'s deficient performance prong was correct and analyzes the performance prong.

Under the AEDPA, this court's focus is on whether the state habeas court unreasonably applied the law in finding no prejudice.

"A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of the *Strickland* test." *Armstead v. Scott*, 37 F.3d 202 , 206 (5th Cir. 1994), *cert. denied*, 115 S. Ct. 1709 (1995). To show *Strickland* prejudice, a petitioner must establish that trial counsel's errors were so deficient as to render the verdict fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 113 S. Ct. 838, 842-43 (1993); *Strickland*, 104 S. Ct. at 2064. A petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S. Ct. at 2052.

The evidence does not show that counsel's failure to object to some of the items seized at Dudley's arrest made his trial fundamentally unfair. As the Texas courts noted, the knife, stun gun, and handcuffs were irrelevant to Dudley's culpability for capital murder and inconsequential in light of the amount, strength, and nature of other evidence of guilt. Credible evidence placed Dudley in the Tovar house at the time of the murders, armed, and established that Dudley threatened the victims, while they were bound and helpless. Ample evidence proved Dudley's role as at least a party to the murders. It is not reasonably probable that the jury would

have returned a different verdict had trial counsel objected to the introduction of the three disputed items.

In light of the significant evidence before the jury and the marginal nature of the three items of challenged evidence, the state court reasonably determined that trial counsel's failure to object to the introduction of the three pieces of evidence did not result in *Strickland* prejudice. Dudley has failed to show that trial counsel's deficient performance made his trial fundamentally unfair and that the state court's decision was an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d)(1). This claim is denied.

## VI.   The Insufficiency of the Evidence Claims

Dudley contends that the State presented insufficient evidence in the guilt/innocence phase to convict him of capital murder, either as the shooter or as a party to the killings. Dudley also contends that the State presented insufficient evidence in the punishment phase to support the jury's answer to the second special issue. The Texas Court of Criminal Appeals denied these claims on both direct and post-conviction review.[24]

---

[24] Dudley also challenges the evidence supporting the jury's answer to the future dangerousness special issue. Dudley failed to exhaust that claim in state court. Dudley has failed to prove cause and prejudice; his future dangerousness claim is procedurally barred. However, this court notes that the evidence of Dudley's lengthy record of violent past criminal conduct and conduct during the robbery and shootings provided ample support for the future dangerousness finding. *See Martinez*, 255 F.3d at 245 (recognizing that Texas allows the future dangerousness inquiry to rest

**A.    The *Jackson* Standard for Reviewing a Sufficiency of the Evidence Claim**

In reviewing the sufficiency of the evidence, a court asks "whether after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 99 S. Ct. 2781, 2789 (1979); *see also Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir.) (applying the *Jackson* standard in the capital context), *cert. denied*, 121 S. Ct. 122 (2000).  Under *Jackson*, a court may not substitute its view of the evidence for that of the fact finder, but must consider all the evidence in the light most favorable to the prosecution. *See Jackson*, 99 S. Ct. at 2789; *Miller*, 200 F.3d at 286 ("This Court examines all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the issue in controversy to have been proven beyond a reasonable doubt.").  The *Jackson* standard "does not focus on whether the trier of fact made the correct guilt or innocence determination, but whether it made a rational decision to convict or acquit." *Herrea v. Collins*, 506 U.S. 390, 402 (1993).  In applying the *Jackson* standard, "a federal habeas court refers to the state's criminal law for the substantive

---

on the "circumstances of the offense alone"); *Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir.) (finding sufficient evidence based on "deliberateness and brutality in the execution of the heinous crime"), *cert. denied*, 121 S. Ct. 122 (2000); *Hughes*, 191 F.3d at 607 (finding sufficient evidence to support the future dangerousness finding based on the defendant's prior violent acts).

elements of the offense." *Hughes v. Johnson*, 191 F.3d 607, 619 (5th Cir. 1999), *cert. denied*, 120 S. Ct. 1003 (2000), taking into account the evidence at trial and the inferences that support the verdict. *See Santellan*, 271 F.3d at 193.[25]

### B.    The Evidence in the Guilt/Innocence Phase

The jury instructions allowed for a capital conviction if Dudley:

(1) intentionally or knowingly caused the death of at least two of the four deceased individuals (Jose Tovar, Jessica Quinones, Audrey Brown, or Frank Farias) in the same criminal transaction;

(2) intentionally caused the death of Jose Tovar while in the course of committing or attempting to commit robbery;

(3) with the intent to promote or assist in the commission of capital murder, solicited, encouraged, directed, aided, or attempted to aid Arthur Brown in killing two or more of the four decedents during the same criminal transaction; or

(4) with specific intent to promote or assist in the commission of robbery, solicited, encouraged, directed, aided, or attempted to aid Arthur Brown in shooting Jose Tovar with the intent of killing him.

(Trans. Vol. I-A, pp. 399-400). The trial court's instruction, (Trans. Vol. I-A, p. 399), allowed the jury to convict Dudley as a party to the offense if he "merely solicited,

---

[25]   Since the passage of the AEDPA, some courts have questioned whether to view the sufficiency of the evidence review as a factual inquiry, governed by 28 U.S.C. § 2254(d)(2), or a legal inquiry, governed by 28 U.S.C. § 2254(d)(1). *See, e.g., Hale v. Gibson*, 227 F.3d 1298, 1335 n.17 (10th Cir. 2000), *cert. denied*, 121 S. Ct. 2608 (2001); *Hogan v. Gibson*, 197 F.3d 1297, 1306 (10th Cir. 1999), *cert. denied*, 121 S. Ct. 332 (2000). The Fifth Circuit, however, applies 28 U.S.C. § 2254(d)(1) to *Jackson* claims. *See Martinez*, 255 F.3d at 244.

encouraged, directed, aided, or attempted to aid Arthur Brown in committing the

murder of two or more people or murder in the course of robbery as long as [he] had

the specific intent to commit capital murder or robbery respectively." Opinion, at 7.

On direct appeal, Dudley argued that the evidence at trial did not support

the guilty verdict.  The Court of Criminal Appeals reviewed the evidence supporting

the conviction, as follows:

> Viewed in the light most favorable to the verdict, the
> evidence established the following facts.  Appellant
> participated in drug transactions with Rachel and Jose.  On
> the day of the instant offense, appellant, Brown, and
> Dunson confined the six persons in the Tovars' house.
> Appellant stood over Jose holding a gun to his head,
> accused him of causing the death of another individual, and
> demanded money.  A man similar in stature and dress to
> appellant holding a chrome gun shot both Jose and
> [Cortes], killing Jose.  All of the hostages were shot in the
> head, either by appellant or one of his accomplices.  Four
> of the hostages died as a result of their wounds.  Appellant
> and his accomplices then removed money and drugs from
> the house.  Appellant later arranged for the surreptitious
> transport of the stolen drugs, fled to North Carolina, and
> concealed his identity.

Opinion, at 7-8.  Based on this review, the Court of Criminal Appeals held as follows:

> Based on these facts, a rational juror could have concluded
> beyond a reasonable doubt that [Dudley] aided Brown in
> confining, robbing, and shooting the six complainants and

> personally shot Jose in the head with the intent to kill him
> while in the course of robbing him.  We hold this evidence
> was sufficient to convict [Dudley] both as a party to capital
> murder and as a primary actor under the above charge.

Opinion, at 8.  The court will review this determination under the AEDPA.

The Fifth Circuit has recognized that "Texas' 'law of parties' may support a conviction for capital murder." *Montoya*, 65 F.3d at 415.  "[U]nder Texas's 'law of parties,' a person charged as a principal with capital murder may be convicted on evidence showing only that he aided and abetted the commission of the offense." *Green v. Johnson*, 160 F.3d 1029, 1037 n.12 (5th Cir. 1998), *cert. denied*, 119 S. Ct. 1107 (1999); *see also Brown v. Collins*, 937 F.2d 175, 183 (5th Cir. 1991) ("Texas law draws no distinction between principals and accomplices for purposes of assessing criminal responsibility and punishment;  they are all equally culpable."). Yet "[m]ere presence at the scene of the crime and flight from the scene do not suffice to prove beyond a reasonable doubt that one is guilty as an accessory to an offense." *Isham v. Collins*, 905 F.2d 67, 69 (5th Cir. 1990) (citing *Turner v. McKaskle*, 721 F.2d 999, 1001 (5th Cir. 1983)).

Texas courts have explained the evidence necessary to support a conviction under the law of the parties doctrine, as follows:

> Evidence is sufficient to convict the defendant under the
> law of parties where he is physically present at the

commission of the offense, and encourages the commission of the offense either by words or other agreement. The agreement, if any, must be before or contemporaneous with the criminal event. *To convict someone as a party to an offense, the evidence must show that at the time of the offense the parties were acting together, each doing some part of the execution of the common purpose.* In determining whether the accused participated as a party, the court may look to events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.

*Cordova v. Lynaugh*, 838 F.2d 764, 769 (5th Cir. 1988) (italics added) (quoting

*Cordova v. State*, 698 S.W.2d 107, 110-11 (Tex. Crim. App.1985)), *overruling on*

*other grounds recognized by Vanderbilt v. Collins*, 994 F.2d 189, 195 (5th Cir. 1993).

In his petition, Dudley recited the circumstances surrounding the

murders, focusing on the fact that no eyewitness could unequivocally identify him as

the shooter.[26]  Based on trial testimony showing that a bullet from a "shiny" gun

killed Jose Tovar, Dudley argues that Arthur Brown shot Jose Tovar and that Tony

Dunson killed the other victims.  However, Dudley did not consider the evidence

under the *Jackson* standard.  Instead, Dudley presented the evidence in a manner most

---

[26]  Cortes testified that he saw Jose Tovar's murder.  Dudley argues that Cortes's identification of him as the murderer was not strong. (S.F. Vol. XXIV, pp. 440-41, 460, 473-74). However, under the *Jackson* standard the court must view the facts in a light most favorable to the prosecution.  In that light, Cortes's identification sufficiently identified Dudley as the shooter to support the verdict.

favorable to his claims and failed to acknowledge the ample evidence showing that he was at least party to the killings.

Dudley emphasized the lack of testimony by an eyewitness positively identifying him as the one who pulled the trigger. Eyewitnesses placed Dudley in the Tovar house, armed, actively participating in the events that led up to the shootings, including tying the victims and threatening them. The jury charge required Dudley's participation as a *party* to the murders, which, as the facts outlined by the Court of Criminal Appeals, was clearly proven. The two survivors of the shootings testified as to their observations of Dudley's involvement. Sufficient evidence rationally supported Dudley's conviction as a party.

Under Texas law, when the jury returns a general verdict and the evidence is sufficient to support a guilty finding under any of the allegations submitted, the verdict will be upheld. *See Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992), *cert. denied*, 113 S. Ct. 3047 (1993). As the evidence at trial sufficiently supported a conviction based on the law of the parties, whether sufficient evidence supported the other theories is immaterial. However, as the Court of Criminal Appeals also found sufficient evidence that Dudley acted as the gunman in killing Jose Tovar, this court will briefly address the sufficiency of the evidence to support that determination. Trial testimony described the man who Jose Tovar as

strongly resembling Dudley.  A witness saw Dudley holding a gun that looked like the one used to shoot several of the victims.  Dudley argues that he could have given the weapon to another person or that there may have been a misidentification.  However, the *Jackson* standard does not require the court to make such inferences.  Viewing the evidence in a light friendly to the verdict, as *Jackson* requires, this court cannot conclude that the Texas Court of Criminal Appeals was unreasonable.

The evidence at trial proved Dudley's culpability either as a party or as the triggerman.  Sufficient evidence existed for a reasonable jury to find him guilty of capital murder, beyond a reasonable doubt.  The state court's rejection of this claim was not contrary to, or an unreasonable application of, federal law under 28 U.S.C. § 2254(d)(1), and Dudley's claim is without merit.

**B.    The Evidence as to the Second Special Issue**

The second special issue, submitted at the conclusion of the punishment phase of trial, asked as follows:

> Do you believe from the evidence beyond a reasonable doubt that Marion Butler Dudley, the Defendant, actually caused the death of Jessica Quinones, Jose Tovar, Audrey Brown, or Frank Farias, or did not actually cause the death of Jessica Quinones, Jose Tovar, Audrey Brown or Frank Farias but intended to kill Jessica Quinones, Jose Tovar, Audrey Brown, or Frank Farias or another or anticipate that a human life would be taken?

(Trans. Vol. I-A, p. 508).  Dudley argued that the evidence of his participation in the

murders inadequately supported the conclusion that he either caused a murder,

intended to kill one of the victims, or anticipated that a life would be taken.[27]

Dudley raised this claim on direct review.  The Court of Criminal

Appeals considered the evidence showing that Dudley knowingly and intentionally

committed the murders, concluding as follows:

> we note that none of the assailants wore face masks or
> disguises to prevent the victims from identifying them
> later.  Appellant had prior drug dealings and recent conflict
> with the Tovars.  Appellant yelled intimidating comments
> at the victims, held a gun to Jose's head, and blamed him
> for his "brother's" death and shot Jose in the face from
> very close range.  We hold that this evidence was sufficient
> to support the jury's affirmative answer to the second
> punishment issue.

Opinion, at 9.[28]  This court reviews that decision under the AEDPA.

---

[27] There is some question whether a federal habeas court can review the sufficiency of the evidence supporting the jury's answers to the special issues. *See Hughes*, 191 F.3d at 619.  The Fifth Circuit and the Supreme Court have not decided whether the Constitution requires such a sufficiency review.  *See id.*  However, the Fifth Circuit has "on several occasions addressed the merits of challenges to the sufficiency of evidence supporting a jury's answers to special issues at the penalty phase of a death penalty trial."  *Id.*; *see, e.g., Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 1127 (1994); *Johnson v. Collins*, 964 F.2d 1527, 1530-31 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 4 (1992); *Fierro v. Lynaugh*, 879 F.2d 1276, 1280 (5th Cir.), *cert. denied*, 110 S. Ct. 1537 (1990); *Evans v. McCotter*, 790 F.2d 1232, 1242-43 (5th Cir. 1985), *cert. denied*, 107 S. Ct. 327 (1986).  This court will review the merits of the petitioner's sufficiency of the evidence claim.

[28] Dudley also presented this claim in his state habeas proceedings.

Texas courts refer to the second special issue as the "anti-parties" special issue. *See Ladd v. State*, 3 S.W.3d 547, 558 (Tex. Crim. App. 1999), *cert. denied*, 120 S. Ct. 1680 (2000). While a capital conviction may be premised on a defendant's actions as a party, the "law of the parties" is inapplicable in the punishment phase of trial. *See Green v. State*, 682 S.W.2d 271, 287 (Tex. Crim. App. 1984), *cert. denied*, 105 S. Ct. 1407 (1985). The anti-parties charge "protects the defendant's constitutional rights by ensuring that a jury's punishment-phase deliberations are based solely upon the conduct of that defendant and not that of another party." *Martinez v. State*, 899 S.W.2d 655, 657 (Tex. Crim. App. 1994), *cert. denied*, 116 S. Ct. 378 (1995); *see also McFarland v. State*, 928 S.W.2d 482, 516 (Tex. Crim. App. 1996), *cert. denied*, 117 S. Ct. 966 (1997). "[T]he point of the anti-parties charge is to direct the jury's focus to the conduct or mental state of the defendant as opposed to that of a co-defendant or accomplice." *Solomon*, 49 S.W.3d at 371. The Court of Criminal Appeals has held that this provision requires a "highly culpable mental state." *Ladd*, 3 S.W.3d at 573.

Viewed in the light most favorable to the verdict, the evidence at trial showed that Dudley killed Jose Tovar. Other evidence also reflected Dudley's culpable mental state, consistent with the jury's answer to the second special issue. Dudley participated in tying up and threatening the six individuals in the house.

Dudley pointed a gun at Jose Tovar's head while accusing him of causing the death of Dudley's brother. Dudley participated in the robbery. The record evidence proves, at a minimum, that Dudley anticipated that a human life would be taken. Dudley's activities displayed a unmistakable intent to kill the people present in the Tovar house. A reasonable jury could have answered the second special issue affirmatively. This claim is denied under the AEDPA. *See* 28 U.S.C. § 2254(d)(1).

## VII.   Certificate of Appealability

Although Dudley has not yet requested a Certificate of Appealability ("COA"), the issue of a COA is likely to arise. This court may deny a COA *sua sponte*. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) ("It is perfectly lawful for district court's [*sic*] to deny COA sua sponte. The statute does not require that a petitioner move for a COA; it merely states that an appeal may not be taken without a certificate of appealability having been issued."). A petitioner may obtain a COA either from the district court or an appellate court, but an appellate court will not consider a petitioner's request for a COA until the district court has denied such a request. *See Whitehead v. Johnson*, 157 F.3d 384, 388 (5th Cir. 1998). "A plain reading of the AEDPA compels the conclusion that COAs are granted on an issue-by-issue basis, thereby limiting appellate review to those issues alone." *Lackey v, Johnson*, 116 F.3d 149, 151 (5th Cir. 1997).

A COA may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also United States v. Kimler*, 150 F.3d 429, 431 (5th Cir. 1998).   A petitioner "makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir.), *cert. denied*, 121 S. Ct. 400 (2000).  The Supreme Court has stated that

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  The issue becomes somewhat more complicated where . . . the district court dismisses the petition based on procedural grounds. We hold as follows:  When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000).  "The nature of the penalty in a capital case is a 'proper consideration in determining whether to issue a [COA], but the severity of the penalty does not in itself suffice to warrant the automatic issuing

of a certificate.'" *Washington v. Johnson*, 90 F.3d 945, 949 (5th Cir. 1996) (quoting *Barefoot v. Estelle*, 103 S. Ct. 3383, 3394-95 (1983)), *cert. denied*, 117 S. Ct. 1259 (1997).

The court has carefully considered each of Dudley's claims. While the issues Dudley raises are important and deserving of close scrutiny, the court finds that each of his claims is foreclosed by clear, binding precedent. This court concludes that under these precedents, Dudley has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As to those claims that have been dismissed on procedural grounds, this court concludes that jurists of reason would not find it debatable whether the petition states valid grounds for relief and would not find it debatable whether this court is correct in its procedural determinations. This court concludes that Dudley is not entitled to a certificate of appealability on any of his claims.

## VIII. Conclusion

Dudley has presented some of his claims to the Texas state courts, both on direct review and in post-conviction proceedings. To the extent that Dudley failed to raise certain claims properly in the Texas courts, those claims are DENIED as procedurally barred.

As to those claims which Dudley adequately presented to the Texas Court of Criminal Appeals, either on direct review or during the state habeas proceedings, Dudley has failed to show that the state court's adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

This court GRANTS respondent's motion for summary judgment; DENIES Dudley's motion for summary judgment; DENIES Dudley's petition for a writ of habeas corpus; and DENIES Dudley a certificate of appealability. An appropriate final order dismissing this case will issue separately.

SIGNED on September 24, 2002, at Houston, Texas.

Lee H. Rosenthal
United States District Judge